Haight, J.
This action was brought by a judgment creditor of the defendant Gauhn to have an assignment made by him for the benefit of creditors adjudged fraudulent and void. The defendant Gauhn was engaged in the business of plumbing, gas, steam heating and stationary engineering in the city of Rochester. He had previously been in company with one Bassett, but in April, 1886, he purchased his interest in the firm, assuming the liabilities, and continued the business individually. On the 6th day of September, 1886, he executed the assignment in question to the defendant Bartholomew Keeler, who qualified anJ entered upon his duties as such. It is contended that there was intentionally and fraudulently withdrawn from the operation of the assignment a large sum of money and other assets for the purpose of defrauding the plaintiffs, and that the pretended indebtedness set forth in the assignment as due to certain persons, is fictitious, and that the preferred claimants were inserted for the purpose of defrauding the plaintiffs.
By the the terms of the assignment, Mary A. Gauhn, the wife of the defendant, was preferred to the amount of $115. It. appears from her evidence, however, that on March 11, 1880, she loaned her husband the sum of $125, and on the 3d of March, 1.882, the further sum of fifty dollars. That *718 she drew this money from the Rochester Savings Bank, where she had it on deposit in her own name; that it was money that she had in part acquired from her own earnings as a dressmaker, before her marriage with the defendant. To corroborate her testimony, the bank book was presented, showing the withdrawal at the time named of these-items. The trial court evidently believed this testimony to-be true, and if true, she had a just claim, which the defendant Gauhn could properly recognize and prefer. He also preferred the claim of Mrs. McDermott, his mother in -law, to the amount of $425. It appears that for several years she had lived in the defendant’s family, doing the housework, under an express agreement made by the wife and approved by the defendant Gauhn, to pay her $2.50 per week, which, if true, would leave the sum named due her at the time of the assignment, after deducting the payments-that had in the meantime been paid to her. It also appears that the defendant Keeler, the assignee, was preferred to the amount of $524.62 for professional services, and that his account just before the assignment was raised by the increasing of his charges for services rendered. It also-appears that in July prior to the assignment, Gauhn and wife deeded to the defendant Keeler a house and lot on Delevan street, in the city of Rochester. It, however, appears from the evidence that the professional services of Keeler were fairly and reasonably worth the additional sums charged by him, and that the house and lot in question had been purchased by the defendant Gauhn at a foreclosure sale at Keeler’s request, for him; that Keeler paid all the money thereon; that Gauhn had advanced, nothing, and had no equitable interest in the premises.
It also appears that on the Saturday before the assignment, the defendant Gauhn collected the sum of $152; that at the time of the assignment he had no cash on hand, and did not turn any over to the assignee. It does not clearly appear what became of this cash. It does appear that he was a man of intemperate habits; that he had been upon long debauches, neglected his business, and, it is claimed, that in this way he squandered much of his estate.
There are several transactions, notably those with Keeler, that cause some suspicion in reference to the good faith of the assignment. But the trial court, under the evidence, felt constrained to find that there had been no fictitious claims, intentionally inserted, or any intentional or fraudulent withholding or withdrawal of the money or assets by the assignor. There is evidence which sustains the findings of the trial court, and we cannot now say, notwithstanding the circumstances alluded to, that the findings. *719 are so clearly agaist the weight of evidence as to justify a reversal.
The judgment should, therefore, be affirmed, without costs.
Smith, P. J., Barker and Bradley, JJ., concur.